**United States District Court**
**Central District of Illinois**
**Peoria Division**

| | | |
|---|---|---|
| RUTH A. CASTILLO | ) | |
|     Plaintiff, | ) | |
| | ) | NO. 06-1138 |
| v. | ) | |
| | ) | |
| LINDA S. McMAHON, | ) | Judge Michael M. Mihm |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
|     Defendant, | ) | |

**ORDER**

This matter is now before the Court on Plaintiff's Motion for Summary Judgment and the Commissioner's Motion to Affirm. For the reasons set forth below, Plaintiff's Motion for Summary Judgment [#12] is DENIED, and the Commissioner's Motion to Affirm [#16] is GRANTED.

**BACKGROUND**

Plaintiff, Ruth A. Castillo ("Castillo"), was born February 5, 1949. (R148). She was 56 years old at the time of her administrative hearing. (R38). She has a ninth grade education, has not received a General Education Degree ("GED"), and lives with her husband. (R27, 38) . In the past, Castillo has been employed as a housekeeper at a retirement home, a gas station cashier, and a factory worker. (R27, 40, 41, 42).

Castillo has filed two applications for disability insurance benefits ("DIB"). (R143, 148).

1

The claim at issue, filed on January 22, 2004, alleged the onset of disability on January 1, 2004[1], as a result of bipolar disorder, depression, fibromyalgia, and arthritis. (R26, 27). Castillo's claim was denied at the initial and reconsideration levels, the last of which occurred on November 10, 2004. (R117). She requested a hearing before an administrative law judge ("ALJ") on December 3, 2004. (R124). A hearing was held before ALJ John M. Wood ("ALJ Wood") on September 13, 2005, at which Castillo, who was represented by counsel, Lisa Bird (daughter of Castillo), and vocational expert ("VE") Jennie Chin appeared and gave testimony. (R26, 37). On September 23, 2005, ALJ Wood concluded that Castillo was not disabled under the rules of Social Security. (R34).

Castillo testified that she previously worked as housekeeper at a retirement community. (R27). Her job consisted of preparing meals, cleaning, and helping the residents to bed. (R41). Castillo stated that she quit after she had stopped taking her medication and had a confrontation with a coworker. (R44). She also testified to having four other jobs in a span of nine days. (R41). Castillo worked at two local gas stations for a total of six days. (R43). She quit each job complaining of the hectic pace, which caused her to have panic attacks. Id. The third job was in a factory where she worked for two days. Id. A fourth, unspecified, job had been secured by Castillo, but she never reported to the workplace due to alleged panic attacks. Id.

Castillo testified that she has panic attacks approximately three times a week. (R45). These attacks cause shaking, pacing, tightening of the stomach and chest, cold sweats, and a feeling of suffocation. (R46). She stated that they are unpredictable and can last from several

---

[1] Castillo originally alleged an onset disability date of September 12, 2003, but this was amended during a hearing since she had worked until December 2003. (R40)

hours to an entire night. Id. She testified that her panic attacks are compounded by fibromyalgia, aches, and arthritis in her hands and fingers. (R47). She also has back problems and suffers from severe depression, according to her testimony. Id. These conditions have led to suicide attempts, insomnia, tense family relationships, and monetary complications. (R48, 55). She has admitted to drinking after "bottoming out" because of depression, but denies consuming alcohol to alleviate her panic attacks. (R49-51). Castillo also categorically denied being an alcoholic. (R50-51).

Castillo testified that she can sometimes manage her personal hygiene. (R54). She can drive herself, but does not do so often in fear of having a panic attack behind the wheel. (R39). She is able to cook for the household and is able to mop the floor without assistance. (R56). She is able to do laundry, wash dishes and grocery shop with aid from her husband. Id. She also reported not being able to vacuum their home for at least one year. Id.

Castillo stated that for the past seven months she does not get out of bed several times a week. (R54). Castillo testified that her average day involved waking around 9 am and taking her dog outside. (R55). She then proceeds to sit, drink coffee, and watch tv for the duration of the day. Id. In terms of hobbies or other activities, Castillo does not attend church, does not belong to any clubs or organizations, and does not get any exercise or do anything outdoors. (R56).

ALJ Wood presented the VE with the following hypothetical:

> Assume the past work is the same as the claimant's, exertional capacity limited to full range light work with no limitation to the performance of simple and repetitive tasks, how would that affect the past work? (R66).

The VE testified that this hypothetical individual could perform the work of a cleaner or

maintain a housekeeping position similar to the one Castillo had at the retirement community. (R66). When the ALJ added the criteria of a claimant who could only have occasional interaction with the public, coworkers, and supervisors, the VE stated that these additional facts would not affect the position since it was light, unskilled work. (R66, 67).

The VE continued by stating that a person holding such a position would be granted 10 to 12 absences from work a year if they were newly-hired, and more days, in the form of vacation time, if they were a more tenured employee. (R67). The VE also stated that an unskilled position required the individual to remain focused throughout the day to keep up their production rate. Id. More specifically, the VE stated that in an eight-hour work day an employee would need to stay on task for at least 80 to 90 percent of the time. (R71).

On September 23, 2005, the ALJ issued his decision. (R34). The ALJ found that Castillo's panic attacks, depression, bipolar disorder, fibromyalgia, and history of alcohol abuse impacted her ability to perform work, and were "severe", within the meaning of the Social Security Act. (R28). However, the ALJ determined that Castillo does not have an impairment or combination of impairments that met or is medically equivalent in severity to a listed impairment found on the Listing of Impairments in Appendix 1 Subpart P, Regulation No. 4 (20 CFR Part 404). (R28, 29).

After considering the medical evidence in the record and hearing testimony, ALJ Wood found that Castillo was not credible. (R30). She admitted to drinking regularly, doing many common household chores, visiting with her daughter, and some driving. (R29). Furthermore, she did not fully disclose her drinking with her physicians, which casts doubt on the accuracy and credibility of their diagnoses. (R30, 31).

ALJ Wood considered the evidence as a whole, discounted the claimant's allegations, and found that she is capable of meeting exertional requirements of light work. (R32). Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and either standing and walking, or pushing or pulling arm or leg controls, for a substantial part of the working day. 20 CFR § 404.1567(b). The VE testified that a cleaner or housekeeper is included in the light work category. (R67). The ALJ then found that Castillo was capable of continuing her past relevant work as a cleaner. (R32).

Taken as a whole based on medical evidence and credible testimony, ALJ Wood determined that Ruth Castillo was not disabled under the regulations of the Social Security Act. (R32).

Castillo filed a request with the Appeals Council for review of the ALJ's decision. (R74). The Council declined review of her claim, and the ALJ's decision became the final decision of the Commissioner of Social Security. (R8). This appeal for judicial review followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405 (g).

**DISCUSSION**

In order to be entitled to DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff

must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. See 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

6

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

After studying Castillo's motion for summary judgment, she raises three separate claims: first, that the ALJ's decision denial of "B" criteria for a mental illness was not supported by the record; second, that the ALJ erred in considering Castillo's substance abuse; and third, that the ALJ should not have discounted the findings of her primary psychiatrist, Dr. Joseph Chuprevich. (Cl. Mo. 1). The Court disagrees and finds that the ALJ's decision that Castillo can perform her past relevant work, and is therefore not disabled, is supported by substantial evidence.

In March 1997, Castillo, then Ruth Morris, was denied disability insurance benefits. (R87). The ALJ"s decision stated that her claim was based on back problems, carpal tunnel syndrome, and depression. (R79). According to his Psychiatric Review Technique Form ("PRTF"), ALJ Gerald J. Rickert found that Castillo did not met the A criteria to qualify as disabled. (R88-91). Furthermore, ALJ Rickert ascertained Castillo was only slightly limited in

7

daily activities, moderately limited in social functioning, and that she was able to perform simple unskilled work. (R88-91). Rickert also determined that the claimant's statements regarding her symptoms were not fully credible. (R83-84).

On July 8, 2002, Mrs. Castillo requested reconsideration of her 1997 claim. (R103, 105). Castillo stated that new evidence would show increased left shoulder problems, depression, back problems, and arthritis, which would qualify her as disabled. (R103)  On August 1, 2002, those benefits were again denied. (R106-109).  The reconsideration board found that Castillo could return to work as a custodian within 12 months from the onset of her condition. (R109).  The board reviewed medical evidence, as well as statements made by Castillo, and found that she would not be kept from working for one continuous year.  Id.

Castillo re-filed her current claim for DIB in 2004, bringing forth new medical evidence attempting to show disability based on fibromyalgia, depression, panic attacks, arthritis, bipolar disorder, and low spine deterioration. (R148-157).

In February of 2004, Dr. Sandra Bilinsky reported that although the claimant had pain and fatigue due to her fibromyalgia she would be able to perform light work. (R418).

Castillo visited Dr. Michael Stempniak at Midwest Medical Providers in April 2004 where she received a mental evaluation. (R386).  Stempniak observed that Castillo seemed to have post-traumatic stress disorder based on the abuse of former husbands. (R389).  He also stated that she met the criteria for both panic disorder and bipolar-1 disorder.  Id.  He described her recent episode as moderate, and records that she can complete the activities of daily living along with some household chores.  Id.

Dr. Stanley Rabinowitz, also of Midwest Medical Providers, saw Castillo in April 2004

and conducted a physical examination. (R390). In Rabinowitz's report he stated that Castillo had a history of chronic fibromyalgia. (R392). However, he also mentioned that there was no point tenderness, only mild pain, and no joint inflammation or instability. Id. Her grip strength was normal and her range of motion was within the normal limits. Id.

The claimant's treating psychiatrist, Dr. Joseph W. Chuprevich saw Castillo several times from July 2004 to early 2005. (R419-424, 459-460). Chuprevich diagnosed Castillo as having bipolar disorder and prescribed her medication (Ativan and Paxil). (R423-424). On January 3, 2005, Dr. Chuprevich stated that Castillo was "doing better at this time", despite a continuing relationship with her husband who drinks. (R459) Two days later, on January 5, 2005, Dr. Chuprevich in a two sentence letter stated, "Ruth Castillo is unable to work at this time because of her Bipolar Disorder". (R419).

In July of 2005, the claimant saw Dr. Shawn Bailey. (R466). His assessment showed Castillo to have bipolar depression and disorder and prescribed her Topamax to stabilize her moods. (R467). During the next visit, he stated that she was doing fair and quoted her as saying she was "tremendous amounts better". (R466). The next month, Castillo saw Dr. Bailey for a follow up visit. He stated that the Topamax caused her some confusion, but had improved her moods. He also reported that she was able to "ascertain and discern all the things that are going on", and that Castillo had admitted to going on benders.

On September 30, 2005, Dr. Bailey saw Castillo for left shoulder pain. (R498). He administered a shot, and he stated that she showed marked improvement. (R498).

On October 24, 2005, Castillo was hospitalized for acute agitation, depression, and suicidal ideations at Illinois Valley Community Hospital. (R477). The patient profile stated that

the claimant was depressed, felt helpless, and was frustrated over being labeled an alcoholic by Public Aid. Id. Castillo stated that she was considering suicide by overdosing on pills. Id. On a subsequent status form at Illinois Valley, Castillo was described as clean, sociable, cooperative, and had normal motor activity. (R479). Also, on the Emergency Room Note form filled out by Dr. Gregory Guard, he noted that Castillo's neck and spine were normal and without tenderness. (R481-482). On a progress note filled out two days later, Castillo denied further suicidal ideations, and noted that her self-esteem and confidence were improved (R493). She was later discharged that same day, October 26, 2005. Id.

## APPLICATION

Castillo contends that the ALJ Wood's failure to fill out a separate PRTF is ground for remand. (Cl. Mo. 1). The claimant's motion states that this task is a necessity, but cites to no current statute or case supporting such a contention. It seems clear from reading of the administrative code that such a requirement was removed in 2000. 20 CFR 404.1520a. The code states, "At the administrative law judge hearing and Appeals Council levels...*the written decision must incorporate the pertinent findings and conclusion based on the technique*". 20 CFR 404.1520a(e)(2). The current state of Social Security protocol places a duty on the ALJ to describe the basis for his determination with particularity within the written decision. More specifically, "[t]he decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments". 20 CFR 404.1520a(e)(2). In Castillo's case, ALJ Wood's written decision is more than adequate. Within the body of the decision, he cites to

many statutory provisions which provide both standards and guidelines.  There is also a lengthy discussion of Castillo's personal and medical history which provide the clear path of reasoning used by the ALJ in making his determination.  Also, the ALJ's decision virtually mirrors the A, B, C criteria formula that is used in the PRTF.  Castillo's claim that failure to complete a separate PRTF should result in remand is, therefore, without merit.

Castillo's motion also contends that ALJ Wood's decision concerning B criteria was contrary to the record. (Cl. Mo. 1) As a preliminary matter, it is important to note that it is the province of the ALJ to resolve evidentiary conflicts.  Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534,542 (7th Cir. 1992).

There are four areas of functioning which have been found especially relevant to the ability to work and which correspond to the paragraph B criteria of the mental impairments in the Listing of Impairments.  These "B criteria" are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace in completing tasks; and (4) episodes of decompensation.  20 CFR 404.1520a(c)(3).  Castillo's motion points primarily to what she perceives as the ALJ's misstatement or manipulation of the record.  However, in each respect, ALJ Wood had a substantial basis to support  his findings.

Castillo's testimony establishes that she is, at most, only moderately limited in her performance of daily activities . (R29).  She is able to take care of her personal hygiene (with the proper motivation), cooks, mops the kitchen floor, and can shop and do laundry with minimal help from her husband. (R54, 56).

The ALJ found Castillo to be only slightly limited in social functioning. (R29).  This determination was based on her ability to have relationships with her daughter and husband, go

shopping, and speak to doctors. Id.  The claimant has been cut off by her son and granddaughter (based on a suicide attempt) and testified to not having any friends; however sad this may be does not establish a lack of social functioning. (R48 , 57).  It seems clear that the claimant can maintain relationships, hold conversations, and conduct herself properly in public.  In addition, the ALJ did place social interaction restrictions within his hypothetical to the vocational expert, and it was still determined that Castillo would be able to perform her past relevant work. (R32, 66-67).

       The ALJ found only a moderate difficulty with concentration and pace. (R29).  He pointed to her ability to drive, watch television, and read. Id.  This may have been an understatement considering her past job history, namely having four jobs in nine days. (R43).  However, even a marked limitation at this level will not allow Castillo to prevail.

       The claimant points to three suicide attempts as extended episodes of decompensation. (Cl. Mo. 11).  However, she does not mention the time line or the reasons for these events.  Which appear to have been associated more with alcohol abuse and personal life issues than with any debilitating mental illness. (R29).  Also, at least one of these episodes happened before the reconsideration of her previous social security application.  If previous evaluators did not see fit to give that suicide attempt substantial weight, it is not clear why the ALJ should do so some years later.  There was a substantial basis found within the record to support ALJ Wood's decision concerning the B criteria.

       The claimant further alleges that alcohol abuse was improperly considered to determine the extent of her mental illness.  Castillo cites to the CFR and to case law, neither of which is helpful to her cause. (Cl. Mo. 12). The identified section of the administrative code seeks to

determine the role of alcohol or drugs *after* disability has already been established. 20 CFR 404.1535(a). "The key factor in determining whether drug and alcohol addiction is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 CFR 404.1535(b)(1). However, in this case no materiality discussion was necessary because Castillo was not initially determined to be disabled. Had the ALJ found Castillo disabled with her history of alcohol abuse, a material factor analysis would have been appropriate, but this was not the situation. The ALJ found that Castillo was not disabled according to the rules of Social Security. The ALJ reasonably considered the connection between Castillo's drinking and her more serious episodes. In addition, her alcohol abuse, and failure to disclose it, was used to measure Castillo's credibility, as well as the reliability of her treating physician's medical opinion. Both of these are proper and necessary steps for the ALJ to undertake, and will not be overturned unless they are patently wrong. Diaz v. Chater, 55 F3d. 300, 308 (7th Cir. 1995). Castillo has not met this burden here.

Claimant also alleges that the opinion of her treating mental health physician, Dr. Joseph Chuprevich, should not have been discounted. Generally speaking, more weight is given to the opinion of a treating physician. 20 CFR 416.927(d)(2). However, to be given controlling weight the opinion needs to be well-supported by objective medical, clinical, and laboratory evidence. Id. Clearly a two sentence letter is not sufficient evidence to warrant this kind of deference. (R419). On this issue, the Seventh Circuit has found that:

> The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability. The regular physician may also lack an appreciation of how one case compares with other related cases. A consulting physician may bring impartiality and expertise.

13

Stephens v. Heckler, 766 F2d. 284, 289 (7th Cir. 1985); *also See* Cummins v. Schweiker, 670 F.2d 84 (7th Cir. 1982).  The ALJ concluded that Dr. Chuprevich's diagnoses were instead based on the subjective statements made by Castillo.  (R30).  This evaluation conclusion appears to have been accurate, since his notes contain no clinical or laboratory findings of any kind.  Moreover, Castillo's statements were not found to be credible since she admitted withholding information from her treating physicians.  Again, such credibility determinations will not be overturned by this Court unless they are patently false, and Castillo has failed to satisfy this standard.  Diaz v. Chater, 55 F3d. 300, 308 (7th Cir. 1995)

    Dr. Chuprevich's statement that Castillo is unable to work due to her bipolar disorder is also inconsistent with the record.  Castillo was working up until December 2003, and she left only because she stopped taking medication and fought with a coworker.  Also, Chuprevich's own notes contradict such an extreme claim.  He makes several statements that the claimant is doing better during the early months of 2005.  (R459).  These remarks further undermine the weight that should have been given to Dr. Chuprevich's medical opinion.

    Castillo has the burden of demonstrating that he is disabled and providing medical evidence in support of her claim.  Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  In this case, the record was complete and no further development is necessary.  Castillo's medical records have simply failed to compel the conclusion that she is disabled within the meaning of the Act.  Accordingly, the Court must conclude that the ALJ's determination was supported by substantial evidence.

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Summary Judgement [#12] is DENIED, and the Commissioner's Motion to Affirm [#16] is GRANTED. This matter is now TERMINATED.

Entered this 11th day of July, 2007.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
